## Berdell and others *vs.* Johnson and others.

In an action to recover the price of goods sold to the defendants, an answer setting up, by way of counterclaim, a loss sustained by the defendants upon a quantity of pork previously sold to them by the plaintiffs as inspected sour mess pork, of good quality, which turned out to be of bad quality, and tainted and rotten, is bad on demurrer.

This was an action to recover of the defendants the price of a quantity of lard, sold and delivered to them by the plaintiffs, on the 23d of March, 1853. The defendants, by their answer, denied the indebtedness, and for a further answer and counterclaim, they alleged that before and at the commencement of the action the plaintiffs were indebted to the defendants in the sum of $1988.91, being the amount of loss sustained, and damages and costs and expenses incurred by them, on 349 barrels of pork, sold them by the plaintiffs on the 21st of December, 1852, at the rate of $16 per barrel, which was sold to the defendants by the plaintiffs as and for inspected sour mess pork, of good quality, under the inspection of J. W. Lewis, one of the inspectors of pork, &c. And the defendants averred that after the delivery of said pork to them, and the payment of the price thereof, it was discovered that said pork was not inspected sour mess pork of good quality, but was of a bad quality, and tainted and rotten, and could not be sold as sour mess pork of good quality, but could be sold only as tainted pork, at a loss of $5.50 upon each barrel, besides damages, costs and expenses; of which the plaintiffs had due notice. And the defendants alledged an offer to return the pork, and a refusal to receive the same, or to return the purchase money.

The plaintiffs demurred to so much of the answer as set up a counterclaim, for insufficiency, and they specified, for grounds thereof, that the matters alledged by way of counter-claim were not such as may be so pleaded under section 150 of the code of procedure: 1. Because they did not arise out of the contract or transaction in the complaint set forth as the foundation of the plaintiffs' claim, nor were they connected with the subject of the action; 2d. Because they did not arise on contract.

The demurrer was allowed, on argument at a special term, and the defendants appealed.

*Wm. H. Bell,* for the appellants.

*Harrington & Dodge,* for the plaintiffs.

*By the Court,* ROOSEVELT, J.   The pork for which the defendants claim an offset, it is admitted, was sold, not as sweet, but as sour pork ; it is admitted also that although sold as sour, it was sold as sour mess pork of *good quality,* and inspected. Whereas it turned out to be of bad quality and tainted and rotten, entailing a loss on the purchase of five dollars and a half on each barrel ; in the aggregate more than $2000.   To this claim of the defendants the plaintiffs demur.

It is insisted that the case, on the part of the defendants, is one of tort and not of contract.   This is a mistake.   No fraud or deception is charged.   The answer assumes merely that such a sale imports a warranty that the article was not so far sour as to be tainted and rotten.   A warranty, whether express or implied, is matter not of tort but of contract.   But the question still remains, do the words used import a warranty ?   The general rule, especially in the sale of damaged articles, is *caveat emptor.* If mere expressions of opinion as to quality were to be construed into warranties, there would be no bounds to litigation.   The seller almost universally entertains, and generally expresses, a much higher idea of his commodities than the buyer.   And neither party in a commercial community, there being no fraud, relies upon or expects to abide by such mere expressions of opinion.   The law assumes that if they are used, and the purchaser is materially influenced by them, he will insist, as he has a right to do, upon an express warranty.   It gives him the power, and and imposes upon him the duty, thus far, at least, to take care of himself.   If he would call upon Hercules, he must first put his own shoulder to the wheel.   The courts in this do not justify the high-wrought coloring of vendors.   They merely announce to vendees, as a necessary rule of public policy—essential to the

public peace—that such matters cannot be made the basis of judicial litigation. If then the defendants' counterclaim be founded on fraud, it is inadmissible as such under the code; if, on the other hand, it be founded on contract, the law says the words used make out no contract.

So that, in either view, the demurrer was well taken, and the judgment at special term should be affirmed.

[NEW-YORK GENERAL TERM, November 6, 1854. *Mitchell, Roosevelt* and *Clerke,* Justices.]